```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/22/2016
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
CARL DAVIS,                                          :
                                                    :
                                   Plaintiff,       :
                                                    :         1:14-cv-6405-GHW
              -v -                                  :
                                                    :         MEMORANDUM OPINION
JOSEPH MCCREADY, *et al.*,                           :         AND ORDER
                                                    :
                                   Defendants.      :
------------------------------------------------------------ X

GREGORY H. WOODS, District Judge:

Plaintiff Carl Davis, appearing *pro se*, brings claims against the City of New York, Corizon

Health Services, Inc. ("Corizon"),[1] and multiple doctors and other health care workers alleging that

he received constitutionally inadequate medical treatment while incarcerated at Rikers Island and the

Brooklyn Detention Center between June 15, 2014 and October 14, 2014.  Defendant Dr. Olga

Segal moved to dismiss Mr. Davis's complaint for failure to state a claim on July 7, 2015, and all

other Defendants ("City Defendants," and together with Dr. Segal "Defendants") moved to dismiss

on July 14, 2015.  *See* Dkt. Nos. 53-56, 63-65.[2]  After some delay due to Plaintiff's repeated transfers

between various correctional facilities, the Court received his opposition to the motions to dismiss

on December 9, 2015, and Defendants replied on December 18, 2015.  *See* Dkt. Nos. 93, 96, 98.

For the reasons set forth below, Defendants' motions are GRANTED.

---

[1] Where the names of Defendants differ slightly with respect to corporate form or spelling between the Amended
Complaint and City Defendants' motion to dismiss, the Court will use the spellings and names provided in City
Defendants' motion to dismiss as it assumes that the City has access to relevant records and identifying information that
Mr. Davis did not have when drafting his complaint.

[2] Defendant Segal moved, in the alternative, for a more definite statement pursuant to Federal Rule of Civil Procedure
12(e).  Because the Court grants the motions to dismiss it need not reach this request, but notes that regardless it would
not have considered it because Dr. Segal did not comply with Rule 12(e).  She simply reiterates the language of the rule
and claimed that the Amended Complaint is "vague" and "ambiguous," without "point[ing] out the defects complained
of and the details desired" as required by Rule 12(e).

## I. Background

In the two years prior to the events at issue, Mr. Davis was shot multiple times.[3]  Amended Complaint ("AC") ¶¶ 8-10, Dkt. No. 14.  As a result of the first shooting, he was in a coma for a period of time.  AC ¶ 8. When Mr. Davis woke up from the coma, he was unable to walk and was in a wheelchair for several months before he progressed to walking with a walker and then a cane.  AC ¶¶ 8-9.  He has a permanent condition known as foot drop, and will not have feeling in his left leg for the rest of his life.  AC ¶ 9.  Also as a result of being shot, Mr. Davis has a medical condition that causes his heart to beat "faster than normal at all times."  AC ¶ 10.  Mr. Davis requires an unspecified medication three times per day to slow down his heart, and has also been prescribed oxycodone/OxyContin and pain patches in the past in order to manage the extreme pain he experiences as a result of his injuries.  AC ¶ 10.

When Mr. Davis entered Robert N. Devoren Center ("RNDC"), a jail on Rikers Island, on June 15, 2014, he was seen by Joseph McCready, RPA, and he explained to RPA McCready that he had extreme pain in his back and legs, foot drop, and heart problems as a result of being shot.  AC ¶ 11.  Mr. Davis requested pain medication, asthma medication, and heart medication, as well as a special mattress due to his back condition.  *Id.*  RPA McCready denied those requests, but provided Mr. Davis with a cane.  AC ¶ 11.

On June 20, 2014, Mr. Davis was transferred to the Brooklyn Detention Center, where he was informed that he was not allowed to have his cane.  AC ¶ 12.  He was seen by Dr. Iosif Shpits, who denied his requests for a cane, medication for pain, asthma, and his heart, and a special mattress for his back.  AC ¶¶ 13-14.

---

[3] In the Amended Complaint, Mr. Davis states that he was shot for the first time on April 4, 2012, and a second time on April 17, 2012.  AC ¶¶ 8, 10.  In his opposition to Defendants' motions to dismiss, Mr. Davis states that he was shot for the first time in October 2012, and the second time in April 2014.

Mr. Davis was transferred back to Rikers Island, this time to George Motchan Detention Center ("GMDC"), where he was seen by Dr. Frantz Medard on June 26, 2014. AC ¶ 15. Mr. Davis reiterated his requests, and Dr. Medard provided him with a cane but denied his requests for medication and a special mattress. AC ¶ 17.

On July 6, 2014, Emmanuel Charles requested that Mr. Davis be evaluated by the mental health unit. AC ¶ 23. Mr. Davis refused this evaluation, but informed Mr. Charles that he was experiencing extreme pain and asked to be seen by medical staff. *Id.* Mr. Davis was sent to a mental observation unit on July 10, 2014. AC ¶ 25. On July 11, 2014, he was seen by Gifty Asiedu. Mr. Davis informed Ms. Asiedu that he was fine mentally but was experiencing extreme pain. AC ¶ 26.

Mr. Davis was seen by Dr. Marshall Tse on both July 18 and July 22, 2014. AC ¶ 27. Mr. Davis explained his medical history to Dr. Tse and again requested medication for pain, asthma, and his heart, as well as a special mattress due to his back condition. AC ¶ 27.

On August 26, 2014, Mr. Davis went to sick call and requested a special mattress because he was unable to sleep on the mattress provided by the jail due to the pain in his back and legs. AC ¶ 28. Dr. Rommel Montilus told Mr. Davis that the facility did not issue special mattresses for back or leg pain. AC ¶ 29.

Mr. Davis was seen by Sein Than on September 4, 2014, and explained his medical history and again requested medication for pain, asthma, and his heart, as well as a special mattress. AC ¶ 30. All of Mr. Davis's requests were denied. *Id.*

Mr. Davis also saw two different doctors in September 2014. On September 18, 2014, he saw Dr. Tse, explained that his leg was in pain, and requested a leg brace. AC ¶ 32. Dr. Tse did not provide Mr. Davis with a leg brace, but he did proscribe Naprosyn, an anti-inflammatory medication, for seven days. *Id.* On September 30, 2014, Mr. Davis was seen by Dr. Olga Segal. AC

¶ 33.  Dr. Segal denied Mr. Davis's requests for a knee brace, a special mattress, and medication for pain, asthma, and his heart, but she did provide him with a different facility mattress.  AC ¶ 34.

Mr. Davis went to Bellevue Hospital to have his foot measured for a foot brace on October 6, 2015, but he was never provided with the foot brace.  AC ¶ 35.

On October 11, 2014, Mr. Davis saw Dr. Tse again.  AC ¶ 36.  Mr. Davis was experiencing chest pain, which he attributed to his heart condition, and Dr. Tse gave him Tylenol.  *Id.*

On October 14, 2014, Mr. Davis was seen by Dr. Medard, who denied his requests for pain medication and a special leg brace and foot brace.  AC ¶ 37.

In addition to the appointments and medical care described above, Mr. Davis alleges that on seven different occasions he was given an appointment with a member of the medical staff but the appointment was not kept.  He was given appointments five days in a row at the beginning of July 2014—to see Bianca Morisset (July 1), Jacob Mathew (July 2), Valsa Johnson (July 3), Sabina Gritta (July 4), and Warren Bush (July 5)—but he was not seen on any of those dates.  AC ¶¶ 18-22.  Mr. Davis was also scheduled to see Scott Parks, RPA, regarding his asthma on July 7, 2014, and had an appointment on an unspecified date in late August or September 2014 to see Guy Kelly, and neither of these appointments took place.  AC ¶¶ 24, 30.

Mr. Davis alleges that he continues to experience an elevated heart rate and extreme pain in his back, knees, and foot.  AC ¶ 38.  He has not received a leg or foot brace, high-top shoes, asthma medication, pain medication, heart medication, or a special mattress, and has only had physical therapy on two occasions.  *Id.*

## II.  Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To meet this plausibility

standard, the plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Id.*

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). The Court, however, is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. A complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

Because he is proceeding *pro se*, the Court must liberally construe Plaintiff's submissions and interpret them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . .") (citation omitted). "This admonition 'applies with particular force when a plaintiff's civil rights are at issue.'" *Bell v. Jendell*, 980 F. Supp. 2d 555, 558 (S.D.N.Y. 2013) (quoting *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F.Supp.2d 345, 348 (S.D.N.Y. 2009)). "But the liberal treatment afforded to pro se litigants does not exempt a pro se party 'from compliance with relevant rules of procedural and substantive law.'" *Id.* at 559 (citing *Maisonet*, 640 F. Supp. 2d at 348).

## III. Discussion

### A. Section 1983 Claim for Inadequate Medical Care

To prevail on a claim brought under 42 U.S.C. § 1983, Plaintiff must show that Defendants "acted under color of state law and that [they] deprived him of a right secured by the Constitution or laws of the United States." *Palmieri v. Lynch*, 392 F.3d 73, 78 (2d Cir. 2004) (citing *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). "In order to establish an Eighth Amendment claim arising out of

inadequate medical care, a prisoner must prove 'deliberate indifference to his serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)).[4]  This standard has an objective prong and a subjective prong:[5]  "First, the alleged deprivation must be, in objective terms, sufficiently serious.  Second, the defendant must act with a sufficiently culpable state of mind." *Id.* (internal citation omitted).  "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)); *see also Caiozzo v. Koreman*, 581 F.3d 63, 65-66 (2d Cir. 2009).

### 1.  Sufficiently Serious Deprivation

"Determining whether a deprivation is an objectively serious deprivation entails two inquiries." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).  Courts must determine "whether the prisoner was actually deprived of medical care," and, if so "whether the inadequacy in medical care is sufficiently serious." *Id.* at 279-80.  "If the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Id.* at 280.  "In cases where the inadequacy is in the medical

---

[4] Plaintiff does not specify whether he was a pretrial detainee or a convicted prisoner during the relevant time period, although the Court assumes—because Mr. Davis was being held in city jails during the relevant time period and has since been moved to state correctional facilities—that Mr. Davis was a pretrial detainee.  Pretrial detainees in state custody receive "protection against mistreatment at the hands of prison officials under . . . the Due Process Clause of the Fourteenth Amendment," rather than the Eighth Amendment, which is applicable only to convicted prisoners.  *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009).  Mr. Davis's status as a pretrial detainee or convicted prisoner is a distinction without a difference, however, because courts in the Second Circuit analyze claims for constitutionally inadequate medical care "under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Id.* at 72.

[5]  As the Court has previously noted, the Supreme Court recently held that there is a difference in the appropriate standard when evaluating the defendant's state of mind in the context of excessive force claims under the Eighth Amendment (subjective standard) and Fourteenth Amendment (objective standard).  *See Roberts v. C-73 Medical Director*, et al., 14-cv-5198-GHW, 2015 WL 4253796, *3 n.3 (S.D.N.Y. July 13, 2015) (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)).  Claims involving deliberate indifference to serious medical needs, however, are still treated identically under the Eighth and Fourteenth Amendments.  *Id.*

treatment given, the seriousness inquiry is narrower." *Id.* "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Id.* (quoting *Chance*, 143 F.3d at 702).

In this case, Mr. Davis has not alleged that he was not given any medical treatment whatsoever. He was seen by medical personnel on thirteen different occasions during this four-month period, including nine appointments with five different doctors. He was, at different times, provided with a cane, Naprosyn, and Tylenol. Mr. Davis alleges that he was experiencing extreme pain throughout the relevant time period. Because Mr. Davis is proceeding *pro se* and his complaint must be construed liberally the Court accepts that the Amended Complaint's allegations satisfy the objective prong of the deliberate indifference analysis and will move on to the subjective prong.

### 2. Sufficiently Culpable State of Mind

"In medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin*, 467 F.3d at 280 (citing *Wilson v. Seiter*, 501 U.S. 294, 302 (1991)). "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994)). Thus, in order to state a claim for deliberate indifference to his serious medical needs, a plaintiff must allege that the defendant "knew of and disregarded an excessive risk to [plaintiff's] health and safety." *Caiozzo v. Koreman et al.*, 581 F.3d 63, (2d Cir. 2009) (quoting *Farmer*, 511 U.S. at 837)).

Mr. Davis alleges only that Defendants denied him the treatment he desired. But "[a] difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*,

151 F. Supp. 2d 303, 311-12 (S.D.N.Y. 2001) (citing *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)); *see also Brown v. McElroy*, 160 F. Supp. 2d 699, 706 (S.D.N.Y. 2001) ("[T]he fact that a plaintiff feels that more should have been done for his condition is not a sufficient basis for a deliberate indifference claim.").

Mr. Davis does not allege facts sufficient to state a claim for deliberate indifference to his serious medical needs.  The Amended Complaint states that Mr. Davis never even saw defendants Morisset, Mathew, Johnson, Gritta, Bush, Parks, and Kelly.  There is no allegation that those defendants were ever aware of that the appointments with Mr. Davis were scheduled, that they ever met Mr. Davis or knew of him, or that they prevented the appointments from taking place.  "It is well-settled that where the complaint . . . contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted."  *Dove v. Fordham University*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) (citation omitted).

With respect to the remaining individual defendants— RPA McCready, Dr. Shipits, Dr. Medard, Mr. Charles, Ms. Asiedu, Dr. Segal, Dr. Montilus, and Dr. Tse—the Amended Complaint lacks any factual allegations regarding their state of mind.  "Issues of medical judgment cannot be the basis of a deliberate indifference claim where evidence of deliberate indifference is lacking."  *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (citation omitted) (claim was properly dismissed when inmate alleged that he needed stronger pain medication than was provided but did not allege that medical provider acted with a culpable state of mind).  Therefore, the motion to dismiss is granted with respect to Mr. Davis's claims against the individual defendants.

### B. *Monell* Claims

Mr. Davis also asserts a claim for municipal and supervisory liability against the City of New York and Corizon.[6]  To hold a municipality liable under Section 1983, a plaintiff must plead facts supporting a plausible inference that the constitutional violation they suffered was caused by a municipal policy or custom.  *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Construing the complaint liberally, Mr. Davis alleges that that there was a policy of not providing special mattresses, but he does not allege facts establishing that the denial of a special mattress violated his constitutional rights.  With respect to the underlying violation "plaintiff must allege that (1) he had a preexisting medical condition requiring a special bed to protect against serious damage to his future health; (2) he made that medical condition known to prison officials; (3) he requested a special bed to accommodate such medical condition; and (4) his request was denied by an official [who knew] of and disregard[ed] an excessive risk to [the plaintiff's] health or safety."  *DelaCruz v. City of New York*, 15-cv-3030-PAE, 2015 WL 2399346, at *2 (S.D.N.Y. May 19, 2015) (citation omitted).  Although Mr. Davis has alleged facts that satisfy the first three of these elements, as discussed above he has failed to allege the requisite mental state on the part of any of the doctors or other health care workers who denied his requests for a special mattress.  Therefore, because he has failed to adequately plead an underlying constitutional violation, his *Monell* claim against Corizon and the City of New York must be dismissed.

### C.  ADA Claim

In his opposition, Mr. Davis alleges a violation of the American with Disabilities Act for the first time.  *See* Dkt. No. 93 at 1, 4.  The Court clearly instructed Mr. Davis in four separate orders

---

[6] Corizon is treated as a municipality for these purposes because it is performing the traditionally public function of providing medical care at Rikers Island.  *Mercado v. City of New York*, No. 08-cv-2855-BSJ, 2011 WL 6057839, at *7 n.10 (S.D.N.Y. Dec. 5, 2011); *see also Bess v. City of New York*, 11-cv-7604-TPG, 2013 WL 1164919, at *2 (S.D.N.Y. Mar. 19, 2013) ("In providing medical care in prisons, Corizon performs a role traditionally within the exclusive prerogative of the state and therefore, in this context, is the functional equivalent of the municipality.").

that he had a choice between filing a second amended complaint or an opposition to the motions to dismiss. *See* Dkt. Nos. 66, 78, 85, and 90. "[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." *O'Brien v. Nat'l Property Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) (citation omitted); *see also Lerner v. Forster*, 240 F. Supp. 2d 233, 241 (E.D.N.Y. 2003) ("New claims not specifically asserted in the complaint may not be considered by courts when deciding a motion to dismiss."). Because Mr. Davis did not plead an ADA claim in his Amended Complaint, the Court cannot consider it now.

### D. Leave to Replead

Courts must "freely give leave" for a plaintiff to replead his claims when "justice so requires." Fed. R. Civ. P. 15(a)(2). The Court provided Mr. Davis the opportunity to amend his complaint, rather than filing an opposition, if he believed that amended the complaint would solve the problems identified by Defendants in their motions to dismiss. *See* Dkt. No. 66. Nonetheless, despite the fact that Mr. Davis has amended his complaint once, and chosen to oppose Defendants' motions to dismiss; rather than amend a second time, the Court will give Mr. Davis an additional opportunity to replead because it is not clear that amendment would be futile. *See Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160, 191 (2d Cir. 2015) (futility and notice are the key issues in determining whether to grant leave to replead).

## IV. Conclusion

For the foregoing reasons, Defendants' motions to dismiss are GRANTED. The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 53 and 63.

In light of the fact that Mr. Davis's claims have been dismissed, the Court is adjourning the status conference scheduled for March 1, 2016 *sine die*.

If Mr. Davis wishes to file a second amended complaint, he must do so no later than March 18, 2016.

10

The Court will mail a copy of this Order to Plaintiff.

SO ORDERED.

Dated:  February 22, 2016
New York, New York

_____
GREGORY H. WOODS
United States District Judge