USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/23/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

\------------------------------------------------------------- X

CARL DAVIS,

         Plaintiff,

    -v -

JOSEPH McCREADY, RPA

         Defendant.

\------------------------------------------------------------- X

1:14-cv-6405-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, District Judge:

    Plaintiff Carl Davis was shot eight times in his chest, arms, back, and left leg. Two months later, he was incarcerated at Riker's Island for five days. While at Riker's Island, Mr. Davis received emergency medical care from Defendant Joseph McCready, RPA.[1] In the course of Mr. Davis's emergency visit, he informed Defendant that he suffered from excruciating pain throughout his body, had trouble sleeping and breathing, and had trouble walking due to his gunshot wounds, which were still raw. Mr. Davis requested a variety of treatments, but Defendant provided him with only a cane.

    Mr. Davis was later transferred to various other correctional centers. He developed increasingly severe injuries to his left foot, including ingrown toenails and a curling of his toes, both of which required surgical intervention. Mr. Davis filed this action *pro se*, alleging that he received constitutionally inadequate medical treatment while at Riker's Island. Defendant has moved to dismiss Plaintiff's third amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Mr. Davis plausibly alleges that Defendant's treatment of his leg and foot injury was deliberately indifferent to his serious medical needs, Defendant's motion is

---

[1] Defendant's name is alternately spelled Joseph McReady at different places in the pleadings. Defendant's submissions use the spelling of "McCready." The Court assumes that the correct spelling of Defendant's last name is McCready.

DENIED to the extent that it is based on Mr. Davis's leg and foot condition. Defendant's motion is GRANTED, however, as to all other aspects of Mr. Davis's claim.

## I. BACKGROUND[2]

In October 2012, Mr. Davis was shot on the left side of his body and was in "a coma like state" for four months. ECF No. 144, Third Am. Compl. ("TAC"), ¶ 7. Eighteen months later, on April 17, 2014, Mr. Davis was shot eight times, in both of his arms, his lower back, chest, and left leg. TAC ¶ 8. As a result, Mr. Davis experienced "extreme pain in the legs, chest area and lower back." *Id.* He also suffered from "foot drop," asthma, and heart problems. *Id.*

Nearly two months later, on June 14, 2014, Mr. Davis entered the Robert N. Davoren Complex ("RNDC"), a jail on Riker's Island. TAC ¶ 6.[3] The following day, Mr. Davis was taken to the RNDC's medical department for an emergency medical visit. TAC ¶ 9. He was seen by Defendant Joseph McCready, RPA. TAC ¶ 10. Mr. Davis explained to Defendant that he had extreme pain in his legs and back, foot drop, heart problems and associated chest pain, and breathing problems due to asthma and his gunshot wounds to the chest. *Id.* At that time, Mr. Davis's gunshot wounds were "still 'raw,' patched-up, and the 'stitches' clearly" were showing. *Id.* He had a surgical scar that extended from his chest to his lower abdomen, as well as scarring on his arms, lower back, and left leg. TAC ¶ 14. Mr. Davis "struggl[ed] to walk into" Defendant's office because of his foot drop. *Id.*

---

[2] Unless otherwise noted, the facts are taken from the third amended complaint or Plaintiff's opposition to Defendant's motion, and are accepted as true for the purposes of this motion. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] In Mr. Davis's first and second amended complaints, he alleged that he entered the RNDC on June 15, 2014. *See* ECF No. 14 ¶ 11; ECF No. 111 ¶ 5. For purposes of this motion, the Court will accept as true the date pleaded in Mr. Davis's third amended complaint. The one-day difference between the two dates is immaterial to the Court's evaluation of this matter.

After being examined by Defendant, Mr. Davis requested pain medication for "excruciating pain" in his legs and lower back, a special therapeutic mattress for his back pain and sleeping disorder, a foot brace to stabilize his left foot, and a cane to help him walk and "take some of the weight off his left leg." TAC ¶¶ 11-12; ECF No. 152, Pl.'s Opp. to Def.'s Mot. to Dismiss ("Pl.'s Opp.") at 5.[4] Defendant supplied Mr. Davis with a cane, but did not provide a brace to stabilize his foot drop, a therapeutic mattress, pain medication, or asthma medication. TAC ¶¶ 11, 13.[5]

On approximately June 20, 2014, Mr. Davis was transferred from the RNDC to the Brooklyn Detention Complex. TAC ¶ 17. Approximately three months later, in November 2014, Mr. Davis was transferred to the George Motchan Detention Center (GMDC) in East Elmurst, New York. TAC ¶ 19. While housed at the GMDC, Mr. Davis was not allowed the use of a cane. *Id.* One day, while being escorted to the medical department of the GMDC, Mr. Davis slipped on water that had leaked onto the floor, fell, and was taken away on a stretcher to the Elmhurst Hospital Prison Ward. *Id.* Mr. Davis alleges that it was Defendant's failure to prescribe a leg brace that partially contributed to his vulnerability to falling. *Id.*

Mr. Davis also alleges that prior to his transfer out of the RNDC, Defendant failed to properly record Defendant's "findings and medical recommendations" so that those findings would be available to medical staff who later treated Mr. Davis after he left the RNDC. TAC ¶¶ 17-18.

---

[4] Mr. Davis does not expressly allege in his third amended complaint that he requested a foot brace. In his opposition, however, he states that in his complaint, he "directly made the claim that he requested a foot brace." Pl.'s Opp. at 5. Construing Mr. Davis's filings liberally, the Court accepts that he has alleged that he requested a foot brace. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed' . . . ." (citation omitted)); *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Where . . . the complaint was filed *pro se*, it must be construed liberally to raise the strongest claims it suggests." (quoting *Walker*, 717 F.3d at 124)).

[5] Mr. Davis does not expressly state that Defendant failed to provide him with the therapeutic mattress. He does, nonetheless, state that Defendant "had the authority to prescribe/recommend . . . a special mattress to assist with plaintiff's pain he was suffering from. The defendant purposely ignored the plaintiff's obvious serious medical conditions and needs defendant clearly was aware of, then, failed to administer an adequate medical remedy in reference to the plaintiff's stated obvious injuries as well as excruciating pain a patient would normally suffer under similar circumstances." TAC ¶ 13. Construing the complaint liberally, the Court is satisfied that Mr. Davis pleads that Defendant failed to provide the therapeutic mattress.

This, as well as Defendant's failure to provide "adequate medical treatment," Mr. Davis alleges, led to the "degeneration" of his other body parts as he attempted to compensate for his foot drop. TAC ¶ 18, Pl.'s Opp. at 11. Specifically, his left toenails grew into the skin of his foot, "causing infection, pain and bleeding," and his left toes became curled under his foot. TAC ¶¶ 12, 18, 21. While Mr. Davis was housed at the GMDC, his left toenails were "finally" cut by the center's medical staff. TAC ¶ 18.

Mr. Davis was later transferred back to the RNDC. TAC ¶ 20. On September 20, 2015, while at the RNDC, Mr. Davis's stomach wound re-opened. *Id.* Mr. Davis informed the RNDC medical department, the "Draft Room S[ergeant]," and the "Draft Room Officer" of the reopened wound. *Id.* Mr. Davis was transferred by bus to the Ulster Correctional Facility, where photographs of his reopened wound were taken. *Id.*

Mr. Davis underwent toenail surgery in January 2017, while housed at the Orleans Correctional Facility. TAC ¶ 12; TAC Exhibit B.[6] That month, a doctor at the Erie County Medical Center also prescribed an orthotic foot brace. TAC ¶ 21, TAC Exhibit C. The brace stabilizes Mr. Davis's left ankle and foot while he performs daily activities. TAC ¶ 21. Mr. Davis's toenails had to be cut again by medical staff in February 2017. TAC ¶ 18. He is currently scheduled for surgery to straighten his left toes. TAC ¶ 21. Mr. Davis also receives treatment with an "asthma pump." TAC ¶ 11.

Mr. Davis alleges that, as a result of Defendant's failure to properly treat and document his medical conditions, he continues to suffer from "mental anguish," emotional and psychological

---

[6] To the extent that the medical records attached to Mr. Davis's third amended complaint are relied on by Mr. Davis in alleging his claim for deliberate indifference, the Court will consider them. *See Chambers*, 282 F.3d at 153 (noting that a court may consider material extrinsic to the complaint in evaluating a motion to dismiss when the extrinsic material is "either in [the] plaintiff['s] possession" or is material "of which [the] plaintiff[ ] had knowledge and relied on in bringing suit." (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993))). Defendant has not objected to the accuracy or authenticity of the medical records attached to the third amended complaint. *See DiFolco v. MSNBC Cable, L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (noting that a court may consider a document integral to the complaint only if it is clear that the document's accuracy and authenticity are not in dispute).

distress, and "'unnecessary and wanton infliction of pain' throughout his body," specifically in his left leg and foot, lower back, and chest. TAC ¶ 15. He also alleges that his daily activities have been "significantly affected and filled with substantial pain." *Id.* Mr. Davis asserts that Defendant was fully apprised of his injuries, which were apparent with "just a casual view of" his body. Pl.'s Opp. at 12. Mr. Davis claims that Defendant "ignored [his] obvious grave risks, extreme pain and debilitating conditions" that "would be obvious to any medical practitioner." TAC ¶ 23.

Mr. Davis filed his initial complaint on August 5, 2014, bringing claims pursuant to 42 U.S.C. § 1983 against the RNDC "medical department" and "medical director." ECF No. 1. Following an order from the Court to identify the specific defendants in the proceeding, Mr. Davis filed a first amended complaint on March 6, 2015, alleging that a number of defendants, including Mr. McCready, had denied him adequate medical treatment. ECF No. 14. On February 22, 2016, the Court granted the defendants' motions to dismiss for failure to allege facts sufficient to state a claim for deliberate indifference to serious medical needs and granted Mr. Davis leave to replead. ECF No. 100.

Mr. Davis filed his second amended complaint on June 29, 2016. ECF No. 111. In his second amended complaint, Mr. Davis named only Mr. McCready as a defendant. *Id.* On February 15, 2017, the Court granted Defendant's motion to dismiss the second amended complaint for failure to state a claim and granted Mr. Davis leave to replead by March 14, 2017. ECF No. 141. After being granted an extension of time, Mr. Davis filed his third amended complaint on April 13, 2017, again alleging that Mr. McCready violated his constitutional rights by demonstrating deliberate indifference to his serious medical needs. ECF No. 144. Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on May 5, 2017. ECF No. 146. Mr. Davis submitted his opposition on June 2, 2017, and Defendant submitted a reply affirmation on June 20, 2017. ECF Nos. 152, 156.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this plausibility standard, the plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted). The Court, however, is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. A complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Id.* (alteration in original) (citing *Twombly*, 550 U.S. at 555, 557).

Because he is proceeding *pro se*, the Court must liberally construe Plaintiff's submissions and interpret them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed' . . . ." (citation omitted)). This mandate "applies with particular force when a plaintiff's civil rights are at issue." *Bell v. Jendell*, 980 F. Supp. 2d 555, 558 (S.D.N.Y. 2013) (quoting *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009)). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Id.* at 559 (internal quotation marks and citation omitted); *see also Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) ("[D]ismissal of a *pro se* complaint

is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997))).

## III. DISCUSSION

### A. Claim for Inadequate Medical Care

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must show that the defendant "acted under color of state law and that [he] deprived him of a right secured by the Constitution or laws of the United States." *Palmieri v. Lynch*, 392 F.3d 73, 78 (2d Cir. 2004) (citing *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). "The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A pretrial detainee's claim for deliberate indifference is evaluated under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment, as "[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner—neither cruelly and unusually nor otherwise.'" *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (alteration in original) (citation omitted). To state a claim for deliberate indifference to serious medical needs, a pretrial detainee must satisfy a two-pronged test: First, "the alleged deprivation of adequate medical care must be 'sufficiently serious.'" *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 717 (S.D.N.Y. 2017) (quoting *Spavone*, 719 F.3d at 139). Second, the defendant must act with a "sufficiently culpable state of mind." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

Until very recently, the second, or *mens rea*, prong—the defendant's "sufficiently culpable state of mind"—was assessed subjectively in claims brought under both the Eighth and the Fourteenth Amendments. *See Spavone*, 719 F.3d at 138 ("The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care."); *Caiozzo v. Koreman*, 581 F.3d 63, 70 (2d Cir. 2009) ("[T]he standard for deliberate indifference is the same under the Due

Process Clause of the Fourteenth Amendment as it is under the Eighth Amendment."). Earlier this

year, the Second Circuit held that, in light of the Supreme Court's ruling in *Kingsley v. Hendrickson*,

135 S. Ct. 2466 (2015),

> the pretrial detainee must prove that the defendant-official acted
> intentionally to impose the alleged condition, or recklessly failed to act
> with reasonable care to mitigate the risk that the condition posed to
> the pretrial detainee even though the defendant-official knew, or
> should have known, that the condition posed an excessive risk to
> health or safety.

*Darnell*, 849 F.3d at 35. Accordingly, the *mens rea* prong of a deliberate indifference claim brought by

a pretrial detainee is now to be assessed objectively. *Id.*; *Lloyd*, 246 F. Supp. 3d at 719.[7]

### 1.    Sufficiently Serious Deprivation

"Determining whether a deprivation is an objectively serious deprivation entails two

inquiries." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). Courts must first determine

"whether the prisoner was actually deprived of adequate medical care." *Id.* If so, the Court must

then consider "whether the inadequacy in medical care is sufficiently serious." *Id.* at 280.

### a.    Actual Deprivation

In determining whether Mr. Davis alleges that he was actually deprived of medical care, the

Court preliminarily rejects Defendant's argument that the third amended complaint should be

dismissed because its allegations are contradicted by the medical record of Mr. Davis's June 15, 2014

visit with Mr. McCready.[8] The Court will not consider that medical record because it is not integral

to the third amended complaint and its accuracy is disputed.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a

---

[7] Mr. Davis alleges that Defendant also violated his "Eighth Amendment (cruel and unusual punishment)" rights. TAC ¶ 16. Because Mr. Davis is a pretrial detainee, Pl.'s Opp. at 7, the Court analyzes his claims under the Fourteenth Amendment, and a separate claim under the Eighth Amendment is not cognizable. *See Darnell*, 849 F.3d at 29.

[8] Defendant filed the June 15, 2014 record of his visit with Mr. Davis, along with several others of Mr. Davis's medical records, as Exhibit D to the Declaration of David Rosen in Support of Defendant's Motion to Dismiss (ECF No. 147) ("Rosen Decl.").

district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). "However, 'even if a document is "integral" to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.'" *Id.* (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Id.* (quoting *Faulkner*, 463 F.3d at 134).

Here, Mr. Davis alleges that, when he filed his third amended complaint, he had not received the medical record of his visit with Defendant, despite having submitted three separate requests for his medical records under New York's Freedom of Information Law ("FOIL"), N.Y. Pub. Off. Law § 84-90. TAC ¶¶ 18-19; Pl.'s Opp. at 6. A plaintiff must have "actual notice" of the materials to be considered by a court in its evaluation of the legal sufficiency of the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (noting that "the harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered" (citing *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991))). Therefore, a court may only consider material extrinsic to the complaint in evaluating a motion to dismiss when the extrinsic material is "either in [the] plaintiff['s] possession" or is material "of which [the] plaintiff[ ] had knowledge and relied on in bringing suit." *Id.* (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). Mr. Davis can hardly be said to have had actual notice of Defendant's medical record at the time he filed his third amended complaint if he had no access to

the document.[9]

Even if Mr. Davis had notice of the June 15, 2014 medical record, permitting it to be deemed integral to the complaint, the Court would still lack a basis on which to consider the record at this stage because the parties dispute its accuracy. *See DiFolco*, 622 F.3d at 111; *Faulkner*, 463 F.3d at 134 ("[B]efore materials outside the record may become the basis for a dismissal, several conditions must be met. For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."). In his opposition, Mr. Davis asserts that the record "includes the inaccurate notes" of Defendant. Pl.'s Opp. at 6. Mr. Davis also points to several of the record's notations as evidence of Defendant's "inaccurate documented assessment." *Id.* at 11-12. The medical record would therefore be more appropriately considered at the summary judgment stage, and not on this motion to dismiss. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *see also Goel v. Bunge, Ltd.*, 820 F.3d 554, 560 (2d Cir. 2016) (concluding that the "appropriate occasion to consider" extraneous materials was "on summary judgment, not a motion to dismiss"); *Chambers*, 282 F.3d at 154 (observing that the district court was obligated to convert a motion to dismiss into one for summary judgment when the court elected not to exclude "matters outside the pleadings"). The Court must therefore limit its evaluation of the legal

---

[9] Defendant filed a copy of his June 15, 2014 medical record as an exhibit to his motion to dismiss. *See* Rosen Decl., Exhibit D. Mr. Davis therefore had access to the record at the time he filed his opposition. *See* Pl.'s Opp. at 11-12 (directly addressing statements contained in the June 15, 2014 medical record). A plaintiff may be deemed to have actual notice of extrinsic material if the material is attached to his or her opposition to a motion to dismiss. *See, e.g., DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (finding that the plaintiff "had 'actual notice' of the extraneous documents since he enclosed them with his opposition brief"). The Court declines to find that Mr. Davis's access to the medical record only after Defendant attached it as an exhibit to the motion to dismiss constitutes the type of notice contemplated by *Chambers*, 282 F.3d at 153. Regardless, because there is a dispute as to the accuracy of Defendant's medical record, the issue of notice is not dispositive to the Court's evaluation of whether the record properly may be considered at this stage. *See Faulkner*, 463 F.3d at 134.

sufficiency of Mr. Davis's pleadings to the confines of his third amended complaint and opposition to Defendant's motion to dismiss.[10]

In his third amended complaint, Mr. Davis alleges that he was deprived of treatment after complaining of his various infirmities. He alleges that he requested pain medication, a special therapeutic mattress, a foot brace, and a walking cane, but that Defendant provided only a cane. He also alleges that Defendant failed to provide him with asthma medication after being informed of Mr. Davis's breathing problems. Mr. Davis, thus, sufficiently pleads that he was actually deprived of medical care.

Mr. Davis also alleges that, prior to his transfer to the Brooklyn Detention Complex, Defendant failed to clearly document in his medical records Defendant's "findings and medical recommendations." TAC ¶ 17. The Court noted in its February 15, 2017 Memorandum Opinion and Order that lapses in proper medical record-keeping can support a deliberate indifference claim under the proper circumstances, but that nothing in Mr. Davis's second amended complaint suggested that this alleged lapse caused Mr. Davis any substantial harm. *Davis v. McCready*, No. 14-cv-6405, 2017 WL 627454, at *3 n.3 (S.D.N.Y. Feb. 15, 2017). Mr. Davis now alleges in his third amended complaint that Defendant's poor record-keeping "failed to make other and future Medical Staff aware that, the plaintiff would need to be protected from possibly suffering an infection due to the unnatural way plaintiff's toe nails grow into the skin of his foot." TAC ¶ 17. Mr. Davis also asserts that Defendant's improper documentation "resulted in the plaintiff's Toe Nail on his left-foot to grow inside the skin of his foot causing infection, pain and bleeding." *Id.* ¶ 18.

Mr. Davis has not cured the deficiencies identified in his second amended complaint with respect to Defendant's record-keeping. While he does plead several subsequent injuries that he

---

[10] "A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker*, 717 F.3d at 122 n.1.

sustained while housed at other detention centers, Mr. Davis fails to plead facts that could plausibly show how Defendant's record-keeping caused those injuries. In fact, Mr. Davis asserts that his physical conditions were apparent with "just a casual view of" him and "would be obvious to any medical practitioner." Pl.'s Opp. at 12; TAC ¶ 23. Nothing in the third amended complaint suggests that a failure to properly document such obvious conditions deprived Mr. Davis of medical care. Therefore, while Mr. Davis has successfully pleaded an actual deprivation of medical care based on Defendant's failure to provide treatment, he has not sufficiently stated an actual deprivation due to Defendant's allegedly deficient record-keeping. *See Pabon v. Goord*, No. 99-cv-5869, 2003 WL 1787268, at *7 (S.D.N.Y. Mar. 28, 2003) (holding that defendants' failure to properly forward plaintiff's medical records to outside medical consultants did not establish deliberate indifference, because "it [was] apparent that they had no impact on Plaintiff's treatment or well-being"); *see also Wood v. Housewright*, 900 F.2d 1332, 1334-35 (9th Cir. 1990) (finding that the failure of prison officials to provide a prisoner's medical records to transferee prison did not rise to level of deliberate indifference because it did not cause "substantial harm").

### b. Sufficiently Serious

The seriousness standard envisioned by the Eighth Amendment is that of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 103; *see also Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (stating that seriousness standard "contemplates a 'condition of urgency' that may result in 'degeneration' or 'extreme pain'" (quoting *Hathaway*, 37 F.3d at 66)). The same standard applies under the Fourteenth Amendment. *Darnell*, 849 F.3d at 30 (noting that the objective prong of a deliberate indifference claim is the same under the Eighth and Fourteenth Amendments). "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Salahuddin*, 467

F.3d at 280 (alteration in original) (quoting *Chance*, 143 F.3d at 702).

"[I]f the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Id.* at 280. "In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower." *Id.* "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Id.* (internal quotation marks, alteration, and citation omitted); *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003). In evaluating whether a delay in treatment is sufficiently serious, "the actual medical consequences that flow from the alleged denial of care will be highly relevant." *Carpenter*, 316 F.3d at 187; *see also Snyder v. Alam*, No. 15-cv-4033, 2016 WL 2642226, at *4 (S.D.N.Y. May 6, 2016) (stating that "only those injuries plaintiff specifically attributes to the delay will be considered").

Here, Mr. Davis alleges that he experienced "excruciating pain" and difficulty walking, difficulty sleeping, breathing problems, and chest pain during the relevant time period. His third amended complaint could also be read to allege that the delay in the prescription of a foot brace led to the degeneration of other body parts and, in particular, to the curling of his toes and to ingrown toenails—conditions requiring surgery. The Court therefore accepts for purposes of this decision that his third amended complaint alleges a sufficiently serious medical condition, and thus satisfies the objective prong of the analysis.

### 2. Sufficiently Culpable State of Mind

In determining whether Mr. Davis has pleaded sufficient facts to plausibly suggest that the *mens rea* prong is satisfied, following *Darnell*, the Court is faced with a difficult task. It is called upon to determine, without the benefit of medical expertise, whether an objectively reasonable person in

13

Defendant's position would have known, or should have known, that Defendant's actions or omissions posed an excessive risk of harm to Mr. Davis. *See Darnell*, 849 F.3d at 35; *Lloyd*, 246 F. Supp. 3d at 719.[11]

Under the pre-*Darnell* subjective *mens rea* standard, a court had no need to place itself in the shoes of an objectively reasonable person responsible for providing medical care. Instead, the court had only to determine whether a plaintiff's complaint plausibly pleaded that the defendant had actual knowledge of, and actually disregarded, an excessive risk of harm. *Spavone*, 719 F.3d at 138. As a result, courts were not necessarily called upon to probe into issues of medical judgment when reviewing the pleadings. *See Pabon v. Goord*, No. 99-cv-5869, 2001 WL 856601, at *2 (S.D.N.Y. July 30, 2001) (denying plaintiff's motion for a court-appointed expert and noting that, given the subjective standard of review, the analysis did not involve "complex questions concerning medical diagnosis and judgment" (quoting *Ledford v. Sullivan*, 105 F.3d 354, 359-60 (7th Cir. 1997)).

The Second Circuit made clear that, in assessing the subjective standard prior to *Darnell*, "mere disagreement over the proper treatment" did not give rise to a constitutional claim. *Chance*, 143 F.3d at 703; *see also Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) ("It must be remembered that the State is not constitutionally obligated, much as it may be desired by inmates, to construct a perfect plan for [medical] care that exceeds what the average reasonable person would expect or avail herself of in life outside the prison walls."). However, even under the more onerous subjective test, a plaintiff could surpass a motion to dismiss by alleging that a medical professional consciously chose "an easier and less efficacious" treatment plan. *Chance*, 143 F.3d at 703 (quoting *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974)); *see also Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir.

---

[11] In dismissing Mr. Davis's first and second amended complaints, the Court explained that Mr. Davis had not pleaded any factual allegations regarding Defendant's state of mind. *Davis*, 2017 WL 627454, at *5. As discussed above, since the Court's dismissal of the second amended complaint, the law governing the standard to be applied in determining a defendant's mental state has changed. The standard to evaluate this prong of Mr. Davis's claim is now an objective one. *Lloyd*, 246 F. Supp. 3d at 719.

1989) ("[C]hoice of an easier but less efficacious course of treatment can constitute deliberate indifference."). A court was therefore required to determine whether a complaint pleaded that the alleged "course of treatment was the product of sound medical judgment, negligence, or deliberate indifference." *Chance*, 143 F.3d at 703.[12] It was well accepted that negligence alone could not form the basis for a constitutional claim. *See Estelle*, 429 U.S. at 105-06 ("[A]n inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").

Although *Darnell* changed the standard by which courts are to evaluate the *mens rea* prong, the panel reaffirmed that something more than negligence is needed to elevate a claim of medical misconduct to a constitutional tort. *Darnell*, 849 F.3d at 36 ("But any § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence."). But after *Darnell*, it may not be so easy for a district court to distinguish between "mere negligence" and "*mens rea* greater than mere negligence" in cases involving medical treatment. The distinction between medical treatment that is merely negligent and treatment that supports a constitutional claim depends on the degree of risk associated with the practitioner's conduct. Presumably any negligent conduct by a medical practitioner yields some increased risk of harm to the patient. If a court finds allegations that a medical provider acted negligently, in order to determine whether a plaintiff has pleaded a viable constitutional claim, the court is now required to evaluate whether the risk associated with the negligent conduct would reasonably be expected to be excessive. Determining whether a reasonable

---

[12] In *Chance*, the Second Circuit concluded that the plaintiff sufficiently pleaded deliberate indifference by defendants who provided dental care because he alleged that other dentists had recommended "less invasive procedures that would have saved" the plaintiff's teeth and that monetary incentives drove the defendants' decisions. *Chance*, 143 F.3d at 703-04. The panel reasoned that, if such allegations were proven true, they "would show that the defendants had a culpable state of mind and that their choice of treatment was intentionally wrong and did not derive from sound medical judgment." *Id.* at 704.

medical provider would expect the conduct to result in excessive risk, as opposed to some lower baseline level of risk associated with any negligent medical conduct, may be difficult in the context of a motion to dismiss—a stage at which the court does not have the benefit of expert opinion.

Of course, some pleadings may present factual circumstances that do not require a court to engage in such an assessment. *See, e.g.*, *Villafane v. Sposato*, No. 16-cv-3674, 2017 WL 4179855, at *21-22 (E.D.N.Y. Aug. 22, 2017) (finding plausible allegations to satisfy the *mens rea* prong where the plaintiff alleged that the defendants "were fully aware" the plaintiff required immediate surgery yet delayed treatment and did not produce the plaintiff for surgery); *Youngblood v. City of New York*, Nos. 15-cv-3541 & 16-cv-6100, 2017 WL 3176002, at *4 (S.D.N.Y. July 24, 2017) (finding that the plaintiff stated a claim for deliberate indifference when he alleged that the defendant *knew* the plaintiff needed to remain at the hospital for surgery yet conspired to forge medical release documents and failed to return the plaintiff to the hospital for surgery); *Cuffee v. City of New York*, No. 15-cv-8916, 2017 WL 1134768, at *5 (S.D.N.Y. Mar. 27, 2017) (denying motion to dismiss when the complaint alleged sufficient facts to suggest that the risk to the plaintiff's safety "was obvious"); *but see Molina v. County of Westchester*, No. 16-cv-3421, 2017 WL 1609021, at *4 (S.D.N.Y. Apr. 28, 2017) (finding complaint deficient where the plaintiff conclusively alleged that the defendants knew of the risk to the plaintiff's safety but failed to allege or explain how the defendants had learned of that risk).

Other pleadings, however, may require a certain level of medical knowledge in order to determine what a reasonable medical professional in the circumstances *would have reason* to know, particularly where the factual allegations do not point so obviously to what a defendant *did in fact* know. Other courts have found it prudent to leave the distinction between negligence and recklessness in the hands of experts. *See, e.g.*, *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) ("Whether an instance of medical misdiagnosis resulted from deliberate indifference or negligence is

a factual question requiring exploration by expert witnesses."); *Merritt v. Faulkner*, 697 F.2d 761, 765 (7th Cir. 1983) (noting the important role that expert medical testimony plays in presenting a deliberate indifference claim).  In sum, in *Darnell*, the Second Circuit reaffirmed the vital distinction between mere negligence, and the something greater required to support a constitutional claim.  But the distinction may be more difficult for a court to discern on the face of the pleadings in many cases involving medical treatment:  evaluated objectively, the distinction between negligent medical treatment and treatment that gives rise to a constitutional claim comes down to the degree of risk associated with the negligent treatment—a question courts may be ill-equipped to answer on the basis of the pleadings alone.

In the present matter, the Court cannot, as a matter of law, conclude that Defendant's treatment of Mr. Davis's foot drop, or lack thereof, amounts to nothing more than simple negligence.  Although Mr. Davis does not plead that Defendant *knew* that an excessive risk to his health would come from his sole prescription of a cane, the third amended complaint does suggest that Defendant may have been in a position to know of such a risk.  Accepting Mr. Davis's allegations as true, Defendant was aware of the eight gunshot wounds Mr. Davis had recently received, saw that Mr. Davis struggled to lift his left foot when he walked, and was asked for a foot brace to stabilize Mr. Davis's foot drop.  Defendant was also informed by Mr. Davis of the excruciating pain that he experienced in his back and leg due, as Mr. Davis alleges, to the gunshot wounds and resulting nerve damage.  Defendant also knew the extent of those gunshot wounds as they were still "raw" and Mr. Davis had scarring on his leg.  Mr. Davis additionally pleads that, as a result of his ineffectively treated foot drop, he now suffers from severe conditions of his foot requiring surgery and has sustained additional "degeneration" of other body parts.  On these allegations, the Court cannot conclude that no reasonable physician assistant in Defendant's position would have known, or had reason to know, that recommending nothing more than a cane posed an

excessive risk to Mr. Davis's health and safety. Accordingly, Defendant's motion to dismiss Mr. Davis's deliberate indifference claim premised on Mr. Davis's left leg and foot condition is DENIED.

With respect to Mr. Davis's claim related to Defendant's failure to prescribe pain and asthma medication and a therapeutic mattress, the Court is not faced with a similarly difficult assessment. Mr. Davis has pleaded nothing to suggest that he faced any risk, let alone an excessive risk, as a result of his lack of access to the requested treatments. He claims that he experienced ongoing pain, which reasonably may be attributed to Defendant's choice not to prescribe pain medication and a special mattress. Mr. Davis does not, however, allege how that pain posed an excessive risk to his health and safety. Mr. Davis similarly fails to plead that his asthma was such that leaving it untreated posed an excessive risk of harm. Therefore, Defendant's motion to dismiss Mr. Davis's deliberate indifference claim is GRANTED to the extent that claim relates to Defendant's failure to prescribe pain and asthma medication and a therapeutic mattress.

**B. State Tort Claims**

To the extent that Mr. Davis's third amended complaint can be read to suggest state tort claims against Defendant, those claims are precluded from being litigated in this court by New York Correction Law § 24 ("Section 24"). Section 24 provides:

> 1. No civil action shall be brought in any court . . . against any officer or employee of the [Department of Corrections] . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.
>
> 2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the [Department of Corrections] shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Corr. Law § 24(1) & (2). Courts in the Second Circuit have long held that Section 24 precludes

a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions arising within the scope of their employment. *See, e.g.*, *Ierardi v. Sisco*, 119 F.3d 183, 186 (2d Cir. 1997) ("It is well settled that Section 24 shields employees of a state correctional facility from being called upon to personally answer a state law claim for damages based on activities that fall within the scope of the statute."); *Baker v. Coughlin*, 77 F.3d 12, 16 (2d Cir. 1996) ("Because a New York court would have dismissed [the] claims against [the defendants] pursuant to § 24, the district court should have done so."); *Hassell v. Fischer*, 96 F. Supp. 3d 370, 385 (S.D.N.Y. 2015) ("Because such claims would be barred in New York state courts, this Court equally lacks jurisdiction over the claims."), *appeal pending*, No. 16-2835 (2d Cir.); *Cancel v. Mazzuca*, 205 F. Supp. 2d 128, 138-39 (S.D.N.Y. 2002) (dismissing a plaintiff's state-law claims because it was undisputed that all of the alleged acts or omissions of the defendants occurred within the scope of their employment with the Department of Corrections).[13]

Mr. Davis alleges that Defendant was "employed or retained by the City of New York Department of Corrections to provide medical services at[ ] Robert N. Devoren Center (RNDC)." TAC ¶ 4. Therefore, any state-law claims against Defendant are not properly brought in this court so long as they are based on actions or omissions by Defendant within his scope of employment. An employee's action is deemed to fall within the scope of his or her employment if "the act was done while the servant was doing his master's work, no matter how irregularly, or with what

---

[13] In 2009, the United States Supreme Court declared New York Correction Law § 24 unconstitutional to the extent it was applied to preclude plaintiffs from bringing Section 1983 claims in the New York Supreme Court. *Haywood v. Drown*, 556 U.S. 729, 740 (2009). *Haywood* "does not, however, prevent [Section 24] from stripping New York state courts of jurisdiction over a plaintiff's analogous *state law* claims against [Department of Corrections] officials." *Hassell*, 96 F. Supp. at 385 n.14. Therefore, "the Second Circuit's holding in *Baker v. Coughlin*—that federal courts cannot exercise pendent jurisdiction over state law claims that a plaintiff could not bring in state court—is unaffected by the *Haywood* decision." *Id.; accord Brown v. Dep't of Corr. Servs.*, No. 09-cv-949, 2011 WL 2182775, at *8 (W.D.N.Y. June 2, 2011); *May v. Donneli*, No. 06 Civ. 437, 2009 WL 3049613, at *5 (N.D.N.Y. Sept. 18, 2009) ("A claim brought pursuant to a state law does not implicate the Supremacy Clause, and therefore, the *Haywood* decision does not affect the question of whether this Court has proper jurisdiction to hear this pendent state law claim.").

disregard of instructions." *Ierardi*, 119 F.3d at 187 (citation omitted). To determine whether an employee's act falls within the scope of his employment, a court evaluates

> the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by any employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated.

*Id.* (citation omitted). Nothing in Mr. Davis's third amended complaint suggests that Defendant was acting outside the scope of his employment when he examined Mr. Davis on June 15, 2014. Therefore, under Section 24, any tort claim arising under New York law against Defendant must be dismissed for lack of subject matter jurisdiction. *See Colon v. N.Y. State Dep't of Corr. and Cmty. Supervision*, No. 15-cv-7432, 2017 WL 4157372, at *8 (S.D.N.Y. Sept. 15, 2017) (dismissing state law claims against Department of Corrections employees for lack of subject matter jurisdiction under Section 24).

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted in part and denied in part. As set forth above, Mr. Davis's claim for deliberate indifference to his serious medical needs survives only to the extent that it relates to conditions of his left leg and foot. To the extent that Mr. Davis's claim is based on Defendant's record-keeping and failure to prescribe pain and asthma medication and a therapeutic mattress, the claim is dismissed. To the extent the third amended complaint can be construed to raise state tort claims against Defendant, those claims are dismissed.

The Court does not grant Mr. Davis leave to amend his complaint, as he has already had two opportunities to cure deficiencies raised in his previous pleading. *See Rutolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) ("Leave to amend, though liberally granted, may properly be denied for . . . repeated failure to cure deficiencies by amendments previously allowed . . . .").

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not

be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court requests that counsel for Defendant provide Plaintiff with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.

The Clerk of Court is instructed to terminate the motion pending at docket number 146 and to mail Plaintiff a copy of this order by certified mail.

SO ORDERED.

Dated: October 22, 2017
New York, New York

_____
GREGORY H. WOODS
United States District Judge